E-FILED
Wednesday, 06 October, 2016 04:19:26 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

**SHERRIKA T. ELLISON** _____ )
_____ )
(Name of the plaintiff or plaintiffs) )
)
v. )
)

**THE BOARD OF TRUSTEES AT THE** )
)
**UNIVERSITY OF ILLINOIS AT** )
)
**URBANA-CHAMPAIGN** _____ )
(Name of the defendant or defendants) )

CIVIL ACTION

NO. **16 – CV -** _16-230|_

*Amended* **COMPLAINT OF EMPLOYMENT DISCRIMINATION**

1. Plaintiff **DEMANDS TRIAL BY JURY**.

## I. PARTIES

2. The plaintiff is **SHERRIKA T. ELLISON** _____.

whose street address is **612 ½ E. COLORADO AVENUE** _____

, (city) **URBANA** _____ (state) **ILLINOIS** _____ (ZIP) **61801** _____

(Plaintiff's telephone number) **(217)** – **766-3903** _____

3. The defendant is **THE BOARD OF TRUSTEES AT THE UNIVERSITY OF ILLINOIS**

**AT URBANA-CHAMPAIGN,**

whose street address is **352 HENRY ADMINISTRATION BUILDING, 506 S. WRIGHT ST**,

(city) **URBANA** _____ (state) **ILLINOIS** _____ (ZIP) **61801** _____

(Defendant's telephone number) **(217)** – **333-1920** _____

1

4.  The defendant is_____,

whose street address is_____,

(city)_____(state)_____(ZIP)_____

(Defendant's telephone number)     (   ) _____

5.      The alleged discrimination occurred at **UNIVERSITY OF ILLINOIS AT URBANA-CHAMPAGN,** (city) **CHAMPAIGN** (state) **ILLINOIS** (ZIP) **61820**

6.  The plaintiff [*check one box*]

    was denied employment by the defendant.

**[X]** was hired and is still employed by the defendant.

    was employed but is no longer employed by the defendant.

7.  The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) **October**, (day)___**3**____, (year)___**2011**___ .

## II. JURISDICTION

8.  Jurisdiction over this claim is based on 28 U.S.C. § 1331. Plaintiff alleges that the defendant(s) discriminated against Plaintiff because of Plaintiff's:

    Age (The Age Discrimination in Employment Act, 29 U.S.C. § 621)

    Color (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

**[X]**    Disability (The Americans with Disabilities Act, 42 U.S.C. § 12101 and/or The

Rehabilitation Act, 29 U.S.C. § 701)

    National Origin (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

    Race (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

    Race (42 U.S.C. § 1981)

    Religion  (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

2

[**X**]  Sex/Gender (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

[**X**]  Sex/Gender (Equal Pay Act, 29 U.S.C. § 206)

[**X**]  Use of Leave (Family and Medical Leave Act, 29 U.S.C. § 2611)

Other (list): _____

9.  Plaintiff [**X**] HAS [ ]HAS NOT filed a charge before the United States Equal Employment Opportunity Commission (EEOC) relating to this claim of employment discrimination.  **[EXHIBIT A - copy of charge to this complaint.]**

10.  Plaintiff [**X**] HAS [ ] HAS NOT filed a charge before the Illinois Department of Human Rights (IDHR) relating to this claim of employment discrimination.  **[EXHIBIT A - copy of charge to this complaint.]**

11.  Plaintiff [**X**] HAS [ ] HAS NOT received a Right to Sue Notice. If yes, Plaintiff's Right to Sue Notice was received on or about (date) **JULY 7, 2016**.  **[EXHIBIT B - copy of Notice of Right to Sue to this complaint.]**

### III.  FACTS IN SUPPORT OF CLAIM

12.  The defendant intentionally discriminated against Plaintiff [*check only those that apply*]:

(a)  by failing to hire the plaintiff.

(b)  by terminating the plaintiff's employment.

(c) **X**  by failing to promote the plaintiff.

(d) **X**  by failing to stop harassment;

(e)  by failing to reasonably accommodate the plaintiff's disabilities.

(f)  by failing to reasonably accommodate the plaintiff's religion.

(g) **X**     by retaliating against the plaintiff because the plaintiff did something to assert rights protected by the laws;

(h) **X**     by coercing, intimidating, threatening or interfering with the plaintiff's exercise or enjoyment of rights;

(i) **X**     with respect to the compensation, terms, conditions, or privileges of employment;

(j)            other (specify):_____

_____

13.  State here briefly and as clearly as possible the essential facts of your claim. Describe precisely how each defendant in this action is involved. Give dates and places. Concentrate on describing as clearly and simply as possible what employment action or situation you allege to have been illegal and how it violated your rights. It is not necessary to make legal arguments or cite any cases or statutes.

**See Exhibit C - Statement of Facts**

_____

_____

14.  THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a)            Direct the defendant to hire the plaintiff.

(b)            Direct the defendant to re-employ the plaintiff.

(c) **X**     Direct the defendant to promote the plaintiff.

(d)            Direct the defendant to reasonably accommodate the plaintiff's religion.

(e)            Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) **X**     Direct the defendant to (specify): _____

4

(g) **X**     If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) **X**     Grant such other relief as the Court may find appropriate.

Respectfully Submitted:

_(Plaintiff's signature)_

**SHERRIKA T. ELLISON**
_(Plaintiff's name)_

**612 ½ E. COLORADO AVENUE**

 _(Plaintiff's street address)_

(City) **URBANA**          (State) **ILLINOIS** (ZIP) **61801**

(Plaintiff's telephone number)  **( 217 )** – **766 - 3903**

Date:  **Tuesday, September 27, 2016**

5



EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2014-06627 |

Illinois Department Of Human Rights _____ and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Sherrika Ellison** | **(217) 766-3903** | **07-20-1981** |

Street Address      City, State and ZIP Code

**612 1/2 E. Colorado Avenue, Urbana, IL 61801**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **UNIVERSITY OF ILLINOIS** | **500 or More** | **(217) 333-1889** |

Street Address      City, State and ZIP Code

**Office Of Minority Student Affairs, 130 Student Services Building, 610 E. John St., Champaign, IL 61820**

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address      City, State and ZIP Code

*RECEIVED EEOC*

*OCT 06 2014*

*CHICAGO DISTRICT OFFICE*

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | Earliest: **02-05-2007**    Latest: **09-30-2014** |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION | |
| ☒ OTHER *(Specify)* **Equal Pay** | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent on or about February 5, 2007. My current position is Assistant to the Director. During my employment, I was subjected to different terms and conditions of employment, including, but not limited to, intimidation and a greater workload. I am paid less than my male counterparts, and I have not been promoted. I complained to no avail. Subsequently, I was demoted.

I believe I have been discriminated against because of my sex, female, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act of 1963, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X 10/5/14    X *Sherrika E* <br> Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# Exhibit A

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Sherrika Ellison
612 1/2 E. Colorado Avenue
Urbana, IL 61801

From: Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2014-06627 | Grace Swierczek,
Investigator | (312) 869-8144 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bow*                    6/30/16

**Julianne Bowman,**
**District Director**              (Date Mailed)

Enclosures(s)

cc:   **UNIVERSITY OF ILLINOIS**
**c/o Jennie Marie Duran**
**Assistant Director**
**Office of Diversity, Equity and Access**
**100 Swanlund Administration Building**
**601 East John Street**
**Champaign, IL 61802**

# Exhibit B

**STATEMENT OF FACTS**

**INTRODUCTION**

Plaintiff, Sherrika T. Ellison, African American Female, proceeding Pro Se, brings this action
pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, The Equal
Pay Act, 29 U.S.C. § 206, The Americans with Disabilities Act, 42 U.S.C. § 12101 and the
Family and Medical Leave Act, 29 U.S.C. § 2611 to remedy acts of employment discrimination
based on sex/gender and retaliation perpetuated by Wallace Southerland III with the University
of Illinois at Urbana-Champaign Office of Minority Student Affairs and the University of Illinois
at Urbana-Champaign. Plaintiff contends that the Office of Minority Student Affairs officials
discriminated against her by passing her over for a promotion for over three years because of her
gender and as a form of retaliation.  Plaintiff further asserts that Wallace Southerland III,
retaliated against her for having complained about such discrimination, created a hostile working
environment for her, paid her unequal wages, violating the Equal Pay Act, caused her to suffer
mentally and physically causing the onset of previously resolved health conditions to arise, and
retaliated against her by denying her retroactive compensation for higher level duties she
assumed outside of her job description originally offered by the University of Illinois at Urbana-
Champaign communicating to her that she would not receive the retroactive compensation unless
she withdrew her charge she filed with the United States Equal Employment Opportunity
Commission.

1. Plaintiff, Sherrika T. Ellison, African American female, has been employed for nine years
   and seven months at the University of Illinois at Urbana Champaign Office of Minority

Exhibit C

1

Student Affairs as the Assistant Director of the TRIO Upward Bound College Prep
Academy. She has been employed by the Office of Minority Student Affairs since
February 5, 2007 to the present.

2. Plaintiff Ellison's supervisor is Dr. Wallace Southerland III, an African American male
who is the Associate Dean of Students, Director of the Office of Minority Student
Affairs, and the Director of Federal TRIO Educational Outreach Programs.

3. Plaintiff Ellison's previous immediate supervisor was Dr. Sandra Kato, an African
American female who was the former Director of the TRIO Upward Bound College Prep
Academy who retired from her position on or about December 13, 2013.

4. Dr. Southerland's supervisor is Kenneth Ballom, an African American male, who is the
Dean of Students and Associate Vice Chancellor of Student Affairs at the University of
Illinois at Urbana-Champaign.

5. Since being Plaintiff Ellison's supervisor on or about during the 2010-2011 school year,
Dr. Southerland has treated her differently from similarly situated employees and was
overheard (by Plaintiff Ellison's co-workers at the retirement reception for Dr. Sandra
Kato on or about December 13, 2013, saying "Ms. Ellison will never be named the
Director of the TRIO Upward Bound College Prep Academy now that Dr. Kato has
retired).

6. During the 2011-2012 school year there were several incidents where Plaintiff Ellison
was discriminated against based on her sex/gender and disability and she was subjected
to a hostile and abusive working environment.

2

7. On or about October 3, 2011, Plaintiff Ellison went on Family and Medical Leave Act (FMLA) due to a serious health condition from her position as the Assistant Director for the TRIO Upward Bound College Prep Academy and was scheduled to be off work October 3, 2011-November 21, 2011.

8. Prior to her departure for FMLA Leave, Plaintiff Ellison was registered on or about September 11, 2011 to attend a professional conference scheduled to take place in November 2011.

9. On or about October 26, 2011 Plaintiff Ellison e-mailed Dr. Southerland to inform him that her doctor would be providing a return to work permit for her return to work early. Plaintiff Ellison also asked Dr. Southerland in the e-mail that if the return to work permit was granted would she be allowed to attend the professional conference.

10. On or about October 27, 2011, Dr. Southerland replied back to Plaintiff Ellison's e-mail stating "*If you are cleared to return to work in writing by your doctor and your leave will have ended, then I will approve the travel to the professional conference*".

11. On or about November 1, 2011, Plaintiff Ellison e-mailed her Return to Work Permit to her immediate supervisor, Dr. Sandra Kato.

12. On or about November 7, 2011, Plaintiff Ellison's doctor faxed a copy of the Return to Work Permit to the Office of Minority Student Affairs for Plaintiff Ellison to return to work on or about November 11, 2011. Plaintiff Ellison also e-mailed supervisor, Dr. Southerland to inform him that the Return to Work Permit had been faxed to the office.

13. On or about November 9, 2011, Plaintiff Ellison followed up with an e-mail to Dr. Southerland to check on the status of the travel being approved.

14. On or about November 11, 2011 supervisor Dr. Southerland stated that Plaintiff Ellison had not provided the Request to Return to Work Permit and the paperwork for the travel to the conference was not processed in enough time. Dr. Southerland denied the request for Plaintiff Ellison to attend the conference despite the fact that other staff members had submitted similar travel requests and received approval for requested travel to professional conference. Dr. Southerland did not subject male employees who reported to him to such treatment.

15. One of the professional staff members, Ms. Tanisha King-Taylor, Assistant Director who was scheduled to attend the professional conference became ill and was unable to attend the conference. Dr. Southerland provided Plaintiff Ellison permission to take the staff member's place at the conference verbally on the phone to Plaintiff Ellison and Tanisha King-Taylor and via a text message to Plaintiff Ellison. Pursuant to practice and procedure within the Office of Minority Student Affairs, Plaintiff Ellison secured lodging and food while in attendance at the conference with the intention of being reimbursed while on travel for university business upon her return.

16. Upon her return from the professional conference, Plaintiff Ellison was denied reimbursement for the travel expenses she incurred while traveling on university business because supervisor Dr. Southerland stated that he had approved for her to attend the conference in another staff member's place but he had not approved lodging and meal reimbursements or any other expenses incurred by Plaintiff Ellison while in attendance at the conference. Dr. Southerland did not subject male employees who reported to him to such treatment.

4

17. Plaintiff Ellison complained to the Academic Human Resources Department and met with Ms. Yulee Kim, Employee Relations Coordinator in the Academic Human Resources Department on or about November 15, 2011, November 16, 2011, November 17, 2011, and November 21, 2011 regarding harassment, and discrimination from Dr. Southerland for not being reimbursed for her travel while on university business and for Dr. Southerland not approving the unused vacation and sick time Ms. Ellison did not use when she returned to work from FMLA leave in November 2011. Academic Human Resources in turn communicated to Dr. Southerland that Plaintiff Ellison's entire travel reimbursement submitted should be approved and processed. The travel packed was processed on or around December 2011.

18. Plaintiff Ellison met with Yulee Kim in the Academic Human Resources Department for nine months in an effort to get the unused vacation and sick time from her FMLA leave, 88 hours credited back to her as Dr. Southerland would not approve for the unused time to be credited back to Ms. Ellison.  On or about September 19, 2012, Yulee Kim sent Plaintiff Ellison and e-mail stating she had contacted Plaintiff Ellison's unit to resolve leave reporting and general record keeping issues.

19. The hostile work environment continued in 2012 and 2013. On or about February 2012 and February 2013, Plaintiff Ellison was denied the opportunity to attend two professional development conferences by Dr. Southerland. Plaintiff Ellison had completed applications and had been selected and admitted to attend the conference by the conference administrators. On or about March 2, 2012 Dr. Southerland yelled at Ms. Ellison stating "*I do not have to provide you with a reason as to why you cannot participate in the interviews*", he snapped his fingers and pointed to the door of his office

yelling to Plaintiff Ellison stating *"Get out of my office"*.  Ms. Ellison was trying to

understand why should could not participate in staff interviews on that day as she had

participated in the staff interviews with the other professional staff the day prior. Plantiff

Ellison complained to Dr. Southerland's supervisor Kenneth Ballom on or about March

2, 2012 about the situation that had occurred and the hostile work environment she was

being subjected to and how she felt disenfranchised. Dean Ballom recommended that

Plaintiff Ellison meet with Dr. Southerland with her supervisor Dr. Kato present to

discuss the situation and her concerns. Plaintiff Ellison tried to meet with Dr. Southerland

for an entire year. Dr. Southerland would not meet with Plaintiff Ellison and blamed it on

his busy schedule and calendar. Dr. Southerland did not subject male employees who

reported to him to such treatment.

20. On or about December 13, 2013, the Director of the TRIO Upward Bound College Prep

Academy, Dr. Sandra Kato retired. On or about December 17, 2013 a Parent/Student

Dinner was held for all parents and student participants in the TRIO Upward Bound

College Prep Academy. In the meeting parents and students completed anonymous cards

with questions to be read out loud for Dr. Southerland to answer. Many parents voiced

their opinions stating that Plaintiff Ellison was a viable candidate for the Director

position of the TRIO Upward Bound College Prep Academy given her work experience

with the program and the time she had worked with the program. Dr. Southerland had no

response.

21. On or about December 2013 on several occasions after the retirement of Dr. Sandra Kato

retired, Plaintiff Ellison tried to seek clarity from Dr. Southerland on her role as the

Assistant Director, her job responsibilities and if someone would be named an interim

Director for the program. To no avail her questions were not answered and she was not provided clarity from Dr. Southerland. She was still expected to run the program and manage the day to day operations.

22. On or about February 4, 2014 in a meeting with Dr. Southerland, Plaintiff Ellison brought up a conversation regarding her compensation and job duties she was performing outside the scope of her regular job description. Plaintiff Ellison provided Dr. Southerland with her job description for the Assistant Director position and the job description for the Director position of the Upward Bound Program. Plaintiff Ellison was very clear in communicating to Dr. Southerland that since December 2013 she has been performing all the duties listed in the Director's of the TRIO Upward Bound College Prep Academy job description. Dr. Southerland requested Plaintiff Ellison to provide an additional list of duties she had been performing since December 2013. Plaintiff Ellison communicated to Dr. Southerland that the list provided on the job description for the Director was the list of duties she had been performing. After the meeting, Plaintiff Ellison was not provided with an update from Dr. Southerland nor were Plaintiff Ellison's concerns and the matter addressed for over three months.

23. On or about April 23, 2014, Plaintiff Ellison filed a complaint with the University of Illinois Office of Diversity, Equity and Access against her immediate supervisor, Dr. Wallace Southerland due to a reasonable belief that he had breached his statutory duties germane to harassment, discrimination on the basis of gender and disability, retaliation, a hostile free work environment and health and safety within the working environment. Plaintiff Ellison also outlined her request for a form investigation to be initiated. The Office of Diversity Equity and Access met with Plaintiff Ellison's supervisor Dr.

Southerland and apprised him of her concerns and advised him on her intent to pursue a formal investigation.

24. On or about May 9, 2014 Plaintiff Ellison complained to Kenneth Ballom, Dean of Students and Yulee Kim with the Academic Human Resources Department in a meeting Plaintiff Ellison scheduled to discuss serious concerns about the health of the Upward Bound Program, pay equity issues and Plaintiff Ellison's current role and job duties as the Assistant Director.

25. Kenneth Ballom stated to Plaintiff Ellison that she could expect that pay equity issues would be looked at immediately, he stated that her current role within Upward Bound needed to be redefined and her levels or responsibility, and he stated that he would look at appropriate pay and her not receiving the appropriate pay for the job duties she had been performing.

26. Kenneth Ballom stated that he would look at the expectations of her current role and he would summarize her job description. Plaintiff Ellison provided Kenneth Ballom with a copy of the job description for the Upward Bound Director, the Assistant Director position and informed him of the meeting she had with Dr. Southerland and how she had not received a response since February 2014. Plaintiff Ellison stated that she was doing work that was equivalent to five different positions within the Upward Bound unit. Kenneth Ballom stated that he would look at it all immediately.

27. Plaintiff Ellison never received an update from Kenneth Ballom, nothing was ever done about the pay equity issues as it relates to the job duties Plaintiff Ellison had been performing for the past five months at the time that were well outside of the scope of her

regular job description and responsibilities, nor were the other issues she discussed with

Kenneth Ballom regarding the health of the Upward Bound Program addressed.

28. On or about May 21, 2014, Plaintiff Ellison received e-mail communication from the

Office of Diversity, Equity and Access requesting she provide a written form

investigation complaint to their office. Plaintiff Ellison informed the Office of Diversity,

Equity and Access that she was in the process of writing the formal complaint and that it

had not been an easy task for her given the continued stress, hostile work environment,

harassment, discrimination and pay equity issues she was dealing with on the job.

29. It was not until after Plaintiff Ellison filed the initial complaint with the Office of

Diversity, Equity and Access that on our about July 7, 2014 (seven months after the

retirement of Director, Dr. Sandra Kato), that Dr. Southerland presented an In Excess

Form to Plaintiff Ellison in the amount of $3,003.00. Dr. Southerland stated to Plaintiff

Ellison that the amount would be for all the additional job duties she had performed over

the past seven months that were outside the scope of her regular job description.

30. Plaintiff Ellison asked Dr. Southerland how the amount had been calculated and

communicated to Dr. Southerland that the she was very uncomfortable signing the form

because the amount reflected was not a fair amount given the additional job

responsibilities and duties she had performed.

31. During the summer 2014 Plaintiff Ellison continued to be subjected to rigors, stress,

duress and harassment. On or about August 10, 2014 Plaintiff Ellison e-mailed Dr.

Southerland about the In Excess Form that had been presented to her in July 2014.

Plaintiff Ellison presented Dr. Southerland with an augmented list from the job

descriptions she had provide to Dr. Southerland outlining additional responsibilities and

9

duties she had been performing for the past nine months. Plaintiff Ellison stated in the e-mail given the circumstances presented in the e-mail she asked the In Excess Form reflect and amount in excess of $40,000 given the new level of responsibilities she had taken on.

32. On or about August 11, 2014, Dr. Southerland responded to Plaintiff Ellison e-mail stating "I am still investigating policy and will let you know when I learn something. Thank you."

33. On or about August 15, 2014, Plaintiff Ellison proceeded by filing and submitting a 360+ formal written complaint to the Office of Diversity, Equity and Access against her immediate supervisor, Dr. Wallace Southerland III for being subjected to a systematic campaign of gender discrimination, harassment, retaliation, discrimination on the basis of disability, and a hostile work environment. Dr. Southerland continued to exhibit behavior towards plaintiff Ellison that was intimidating, hostile, degrading, humiliating, and retaliated against her as result of her filing a complaint.

34. After filing the formal complaint Plaintiff Ellison experienced and even more hostile work environment and Dr. Southerland began retaliation against her for engaging in protected activities: complaining about inequitable employment actions.

35. On or about September 12, 2014, Plaintiff Ellison met with Dr. Southerland and Mara Freeman, Human Resources Manager for the Office of Minority Student Affairs. In the Meeting Plaintiff Ellison received a new Job Description and a new job title "Assistant to the Director". The newly assigned duties were below Plaintiff Ellison's capabilities and demeaning in nature. The job duties assigned were more entry-level duties such as filing, and entering data in a database to very few higher-level duties. There was a significant difference in the Plaintiff Ellison's former job description and the new job description.

Plaintiff Ellison was retaliated against because she received a change in job responsibilities and a change in job title (demotion).

36. Plaintiff Ellison, actively communicated with the Office of Diversity, Equity and Access and met with M.T. Hudson and Kaamilyah Abdullah-Span extensively from on or about February 2014-October 2014 (8 months), to communicate complaints on the way she was being treated, to inform them of the how she was being retaliated against after she filed the complaint, to inform them of the hostile work environment she was being subjected to and all issues related to the complaint she filed. Plaintiff Ellison communicated to the Office of Diversity, Equity, and Access that she did not feel that they were handling her complaint properly given how long it took for Dr. Southerland to receive the written complaint and numerous issues with Dr. Southerland's wife, Medra Southerland working directly in the office (conflict of interest).

37. On or about August 13, 2014-September 2, 2014 Plaintiff Ellison went on Family Medical Leave Act (FLMA) leave from work due to being subjected to a hostile work environment.

38. Plantiff Ellison continued to be retaliated against in September 2014. On September 23, 2014 per the job announcement, the Associate Director for TRIO Educational Outreach Programs was advertised and became available.

39. Ms. Ellison applied for the position by the October 8, 2014 deadline and qualified for the position. Ms. Ellison expressed concerns about the duties and responsibilities to the Office of Diversity Equity and Access, specifically Kaamilyah Abdullah-Span about the job duties and qualifications not aligning with the duties for the position outlined in the TRIO Upward Bound College Prep Academy Grant Proposal. (denial of promotion). The

11

job description of the Associate Director for TRIO Educational and Outreach Programs were inclusive of the job responsibilities and duties of Plantiff Ellison's position as the Assistant Director.

40. Dr. Southerland allegedly advertised the Director of the TRIO Upward Bound College Prep Academy under a different title, Associate Director for TRIO Educational Outreach Programs. The qualifications of the position such as the education experience and years of experience were inflated so that Ms. Ellison would not qualify to apply for the position.  The advertisement for the Associate Director for the TRIO Educational Outreach Programs compared to the advertisement for the Associate Director for Retention and Student Success and the Associate Director for Administration and Operations were very different in length, the qualifications, and educational requirements. There was a clear discrepancy in the differences of the job announcements.

41. In 2015, Dr. Southerland advertised and created two additional Associate Director Positions. Dr. Southerland hired two African American male employees as Associate Director. Alan Clay, African American male, Associate Director for Administration and Operations effective May 11, 2015 and Mr. Cory Major, African American male, Associate Director for Retention and Student Success effective June 1, 2015. No female staff was hired as result of the searches for the two Associate Director positions.

42. On October 6, 2014, Ms. Ellison timely filed a formal complaint to the United States Equal Employment Opportunity Commission. After filing the complaint Dr. Southerland's treatment became more hostile toward Plaintiff Ellison. Dr. Southerland took away her principal job duties, thereby significantly diminishing her substantive job

12

responsibilities and changed her job title to Assistant to the Director. Dr. Southerland changed Ms. Ellison's office location from the lower level of the Student Services Building to the first floor of the Student Services Building to one office located in the corner across from Dr. Southerland's office. It was communicated to Ms. Ellison to "just throw things in boxes".  Dr. Southerland took away the front desk and other office keys from Ms. Ellison, the Upward Bound Program's office printer was taken away and Dr. Southerland communicated to Ms. Ellison that she would have to walk to the first floor of the building if she needed to print items. Ms. Ellison submitted an order for a two desktop printers that was approved and arrived and Dr. Southerland made Ms. Ellison send the desktop printers back to the company even though funds were available in the grant for the purchase of the desktop printers.

43. Retaliation continued. Retroactive compensation in the amount of $11,628 for higher-level duties assumed upon the retirement of Dr. Kato, (December 16, 2014-September 15, 2014) was denied and not fulfilled. It was communicated to Ms. Ellison that she would not receive the retroactive compensation unless she withdrew the charge with the United States Equal Employment Opportunity Commission (EEOC).

44. On our about August 2016, Dr. Southerland threatened Ms. Ellison communicating to her that he might have to present her with a "T" (termination contract) if she did not be the bigger person and work even hard to help and work her colleague, Charles Young that works in the Upward Bound unit with her.

Dr. Southerland did not subject any male employees within the Upward Bound unit in a similar manner.

13

45. On October 8, 2014 and March 24, 2015 Ms. Ellison reported Dr. Southerland's discriminatory treatment, retaliation, and a hostile work environment towards her to Mr. Kenneth Ballom, Dr. Southerland's direct supervisor. She requested a lateral transfer away from Dr. Southerland to a position that was comparable to the current position she held until such time the investigatory process of the EEOC was completed. Kaamilyah Abudullah-Span with the Office of Diversity Equity and Access also spoke with Kenneth Ballom about the reassignment and fully supported it. Kenneth Ballom did nothing about the reassignment. It never happened. Nor did Kenneth Ballom address the discriminatory treatment, retaliation, and the hostile work environment towards Plantiff Ellison.

46. The stress of the situation forced Plaintiff Ellison to seek counseling services on or about May 2014-October 2014 with the University's Faculty Staff and Assistance Program.

47. Plaintiff Ellison, complained numerous times to the Office of Diversity Equity and Access, Staff Human Resources, Kenneth Ballom, the Ethics Office about numerous issues surrounding discriminatory treatment, retaliation, and a hostile work environment towards her from Dr. Southerland as well as unequal compensation for female staff versus male staff within the Office of Minority Student Affairs and uequal compensation for Plantiff Ellison as she is the lowest paid Assistant Director employed within the Office of Minority Student Affairs.

48. The hostile working environment continued during 2014, 2015 and 2016. Dr. Southerland isolated Ms. Ellison from her colleagues by not including her in meetings with staff, demeaning Ms. Ellison and her female residential staff during the summer 2016 stating *"You all are women, you are not doing any real work, women should be typing, us men are doing the real work and heavy lifting"*, provided poor performance reviews in 2014

14

and 2015 and refused to provide Plaintiff Ellison with a copy of her performance reviews. He took away her ability to supervise the Academic Professional Staff members of the Upward Bound unit given she had supervised Academic Professional Staff previously, he denied her the opportunity to attend professional development trainings, publicly ridiculed her in staff meetings changing her job title on printed documents to Assistant to the Director provided to staff in the Upward Bound unit, asking entry level Program Assistants higher level questions that should have been asked to her, recruitment policies have created and perpetuated an unbalanced representation of sex in the workplace. Dr. Southerland did not subject the male employees who reported to him to such treatment.

49. Since Dr. Southerland began in his current position in 2010 as the Director of the Office of Minority Student Affairs, Dr. Southerland's continuous discrimination and harassment against women has continued. To date, over 40+ staff members have resigned under his leadership. 33+ of the 40+ staff members that have resigned were all women. On or about October 2014-May 2015, there was a pattern where Dr. Southerland hired male staff members only a total of 7 male staff members.

50. Dr. Southerland's gender based and retaliation based harassment, gender discrimination, retaliatory treatments caused Ms. Ellison to suffer mentally and physically causing the onset of previously resolved health conditions to arise resulting in her going to the emergency room several times and her doctor recommending that she be off of work for certain blocks of time during the summer 2015 and several other times.

**Count One**

Gender Discrimination in violation of Title VII of the Civil Rights Act of 1964.

15

### Count Two

Retaliation for engaging in protected activities for complaining about inequitable employment actions.

### Count Three

### Hostile and Abusive Working Environment

The defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII of the Civil Rights Act of 1964.

### Prayer for Relief:

Wherefore, the Plantiff requests that the court award her:

a) Retroactive promotion to the Director level, with all attendant back pay, benefits and other emoluments of employment.

b) Retroactive compensation in the amount of **$232,000.00** for higher level duties assumed upon the retirement of Dr. Kato, (December 16, 2013-present)

c) $2.700,000.00 in compensatory damages suffered because of the discrimination and retaliation.

d) Costs and reasonable attorneys' fee incurred with this lawsuit with interest thereon, and

e) Other damages and further relief as deemed just.