IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| SHERRIKA T. ELLISON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE BOARD OF TRUSTEES OF THE )<br>UNIVERSITY OF ILLINOIS, )<br>)<br>Defendant. ) | Case No. 16-CV-2301<br><br>Jury Trial Demanded |

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, SHERRIKA T. ELLISON, by and through her attorney, Nina R. Gougis of Angela Evans Law, and as and for her Second Amended Complaint and Demand for Jury Trial, states as follows:

**JURISDICTION**

1.      This action is brought pursuant to the Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000e and the *Equal Pay Act of 1963*, 29 U.S.C. § 206, *et seq*.

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper pursuant to 28 U.S.C. §1391(b). The Central District of Illinois is the proper venue for this action because the events giving rise to this lawsuit occurred herein.

**PARTIES**

3.      PLAINTIFF SHERRIKA T. ELLISON (herein ELLISON), female, is a citizen of the United States and the State of Illinois. At all material times herein, ELLISON has resided in the Central District of Illinois. ELLISON has been employed by the University of Illinois Urbana-Champaign since February 5, 2007. ELLISON initially was employed as the Assistant Director of the TRIO Upward Bound College Prep Academy in the Office of Minority Student Affairs. On or

1

around September 12, 2014, ELLISON was demoted to the position of Assistant to the Director of the TRIO Upward Bound College Prep Academy in the Office of Minority Student Affairs.

4.  Defendant THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS (herein BOARD OF TRUSTEES or BOARD) is a politic body and corporation, commonly referred to as the University of Illinois, Urbana-Champaign, with more than 500 employees.

## STATEMENT OF FACTS

5.  Plaintiff filed her complaint alleging violations of Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000E (gender discrimination, hostile work environment, disparate pay and retaliation) as well as violations of the *Equal Pay Act of 1963*, 29 U.S.C. § 206, *et seq*. (gender discrimination and retaliation) with the Equal Employment Opportunity Commission on October 5, 2014 and received her Notice of Right to Sue from the EEOC, dated June 30, 2016. Plaintiff filed her original complaint with this Court on September 28, 2016, within 90 days of receiving the Notice of Right to Sue.

6.  Wallace Southerland (herein Southerland), male, is the Associate Dean of Students and Director of Federal TRIO Educational Outreach Programs for the University of Illinois, Urbana-Champaign. At all times material herein, Southerland also was the Director of the Office of Minority Student Affairs. Southerland was ELLISON's direct supervisor from December of 2013 until approximately October 14, 2016.

7.  Among other duties, Southerland was charged with the direct supervision of employees in the Office of Minority Student Affairs, including ELLISON. Southerland has the authority to make decisions regarding the promotion and demotion of employees in the departments he directs/directed. Southerland also is charged with evaluating the performance of those employees he directly supervises.

8. Sandra Kato (herein Kato) was the Director of the TRIO Upward Bound College Prep Academy of the Office of Minority Student Affairs until she retired on December 13, 2013. Prior to her retirement, Kato was ELLISON's immediate supervisor. During the time Kato was ELLISON's immediate supervisor, ELLISON received "Outstanding" overall performance evaluation ratings – the highest possible rating – on all of her annual performance reviews.

9. At Kato's retirement reception, held on December 13, 2013, Southerland stated "Ms. Ellison, would NEVER be the Director of Upward Bound....that will NEVER happen." This statement was made in front of ELLISON and several co-workers.

10. Notwithstanding Southerland's obvious reluctance to consider ELLISON for promotion to the Director position, Southerland required ELLISON to assume the duties and responsibilities of the position – including management of the day-to-day operations of the TRIO Upward Bound College Prep Academy. ELLISON was required to perform these additional job duties without a corresponding promotion or increase in compensation.

11. ELLISON approached Southerland multiple times requesting further clarification on her role as Assistant Director and the additional job duties she was required to perform. ELLISON also requested that she be named as the interim Director, since she was performing the duties of that position. Southerland did not respond to ELLISON's inquiries or concerns, nor did he name an interim Director.

12. On August 15, 2014, ELLISON filed an internal grievance with the University's Office of Diversity, Equity and Access alleging gender discrimination, harassment, lack of pay equity and hostile work environment. Upon information and belief, the internal grievance was forwarded to the University President, who then reported the grievance to the BOARD. ELLISON

also reported her concerns to Kenneth Ballom, Dean of Students and Southerland's immediate supervisor, as well as Yulee Kim in the Academic Human Resources Department. Ultimately, however, the internal grievance was dismissed without the University and/or BOARD taking corrective action.

13. On or around September 12, 2014, Southerland demoted ELLISON from Assistant Director of the TRIO Upward Bound College Prep Academy in the Office of Minority Student Affairs to Assistant to the Director of the TRIO Upward Bound College Prep Academy in the Office of Minority Student Affairs. ELLISON's job duties were changed substantially to include more entry-level, secretarial duties (such as data entry and file management) and fewer higher-level duties. The duties under ELLISON's new position were demeaning and well-below her qualifications, given that ELLISON has a masters' degree and several years' experience with the University. Furthermore, as part of the demotion, Southerland took away ELLISON's ability to supervise academic professional staff members in her unit. Southerland also publically embarrassed ELLISON by announcing her demotion during a meeting, which ELLISON and several co-workers attended. Upon information and belief, ELLISON's demotion was reported to the BOARD.

14. Southerland demoted all other female Assistant Directors in the Office of Minority Student Affairs – including Mara Freeman (herein Freeman), Grace Casillas (herein Casillas) and Michele Cruz-Santiago – to the positions of Assistant to the Director and changed their job duties. However, male Assistant Directors – including Paul Caldwell (herein Caldwell) and Eric Blacknall (herein Blacknall) – did not receive this demotion. In this regard, similarly-situated male employees (*i.e.*, Caldwell and Blacknall) were treated more favorably than ELLISON and other women in the Office of Minority Student Affairs. Upon information and belief, the BOARD was

aware of the above-mentioned demotions, as well as the fact that similarly-situated male employees in the Office of Minority Student Affairs were not demoted.

15. After the filing of her internal complaint, Southerland continuously subjected ELLISON to retaliation and a hostile work environment by increasingly scrutinizing ELLISON's job performance and issuing negative performance evaluations, purposely excluding ELLISON from department-wide meetings, not allowing ELLISON to attend leadership meetings when other assistant directors and assistants to the director were allowed to attend, not allowing ELLISON to serve on university-wide committees, taking away ELLISON's ability to supervise academic professional staff within her unit, taking away ELLISON's keys to the front desk and storage cabinets that ELLISON needed to access to complete her assigned duties and requiring her to get approval from support staff to access the desk/cabinets, forcing ELLISON to move offices, forcing ELLISON to complete a variety of menial tasks (*e.g.*, forcing ELLISON to clean out storage cases located in the basement) and threatening ELLISON with a termination contract, among other actions that contributed to a hostile work environment.  These incidents were included in the August 15, 2014 internal grievance ELLISON filed with the University's Office of Diversity, Equity and Access which, upon information and belief, was forwarded to the University President, who then reported the grievance to the BOARD.

16. On or around September 23, 2014, Southerland advertised the Director job opening as an opening for the Associate Director for TRIO Educational Outreach Programs, Office of Minority Student Affairs. ELLISON applied for and was well qualified for the position, as evidenced by her credentials, history of outstanding job performance with the University and the fact that she had been performing the duties of the position since December of 2013.

5

17. Southerland subverted ELLISON's efforts to apply for the Associate Director opening by intentionally inflating the required years of experience in the job description. The required years of experience Southerland listed in this particular Associate Director position far exceeded the level of experience required for other Associate Director job descriptions Southerland posted within the department.

18. Southerland refused to consider ELLISON for promotion to the Associate Director position. Instead, Southerland eventually named himself as the Director of the TRIO Upward Bound College Prep Academy, even though he had less working knowledge of the department and, therefore, was less qualified for the position than ELLISON.

19. There were multiple other instances in which Southerland refused to consider female applicants for promotion to higher-level administrator positions and, instead, hired lesser-qualified male candidates, including the following:

    a. Mara Freeman, female, the Assistant to the Director of the Office of Minority Student Affairs at the University, applied for the position of Associate Director for Administration and Operations in response to an online posting of the job vacancy and job description. Freeman was fulfilling the duties of this Associate Director position well before she applied. After Freeman already applied for the position, Southerland revised the job description to customize it to the qualifications of his desired male candidate – Alan Clay. Southerland hired Clay for the Associate Director position in March of 2015 even though he was less qualified than Freeman.

    b. Grace Casillas, female, the Assistant to the Director in the Office of Minority Student Affairs, applied for the position of Associate Director for

6

Retention and Student Access in response to an online posting of the job vacancy and job description. Casillas was fulfilling the duties of this Associate Director position well before she applied. Despite Casillas's qualifications and the fact that she was performing the duties of the position, Southerland hired a less qualified male candidate – Cory Major– for the position in June of 2016.

20. ELLISON, Freeman and Casillas – during the period they were performing the job duties of Director/Associate Director – did not receive the same level of compensation that Major and Clay received.

21. As evidenced above, Southerland refused to consider female applicants – including ELLISON – for higher-level administrator positions. Southerland treated similarly-situated male applicants, including Major and Clay, more favorably by considering and hiring them for these positions. Upon information and belief, the BOARD was aware of these discriminatory hiring and promotion practices.

22. Several statements made by Southerland, from December of 2013 to the present, give rise to an inference of and provides circumstantial evidence of gender discrimination. Such statements also further contributed to the hostile work environment to which ELLISON was subjected. These statements were included in the August 15, 2014 internal grievance ELLISON filed with the University's Office of Diversity, Equity and Access which, upon information and belief, was forwarded to the University President, who then reported the grievance to the BOARD. The statements include the following:

    a. "You all are women, you are not doing any real work, women should be typing, us men are doing the real work and heavy lifting" – This statement was made on or around June 4, 2016. Several staff members were present, including:

Toryannah Herbert (residential advisor), Stephanie Moore (residential advisor), Deja Gardner (residential advisor), Joi Haynes (resident advisor) and other staff members;

b.  "Women should be typing" – Made on or around June 4, 2016, as well as during several staff meetings;

c.  "I have to help a brotha out. I don't want to see another brotha out of a job" – Made after ELLISON reported threatening conduct directed toward her by a male employee; and

d.  "I do not feel that he serves as a threat to you." – Made after ELLISON reported harassment from a male colleague.

23. Due to the above-mentioned pervasive and abusive conduct, ELLISON was subjected to a work environment that she perceived as abusive and hostile. Subjection to such an environment has caused ELLISON to suffer mentally and physically. ELLISON has had to take time off of work on her doctors' recommendations, due to the stress caused from subjection to such a work environment. Furthermore, the above-described work environment is objectively abusive and hostile.

24. Southerland's discriminatory animus against women is common knowledge throughout the University and Office of Minority Student Affairs. Multiple complaints have been filed against Southerland between 2010 to the present from female students and employees alleging gender discrimination, including complaints filed by Kato and Casillas. From 2010 to the present, more than 60 employees left the Office of Minority of Student Affairs; 46 of them were women.

25. Since Southerland is a supervisor/manager whose actions resulted in multiple adverse employment actions taken against ELLISON, the BOARD is strictly liable for the above discrimination and retaliation.

26. At the very least, for the reasons noted above, the BOARD has been well aware of (or should have been aware of) Southerland's discriminatory and retaliatory conduct against ELLISON and the BOARD failed to remedy such discrimination and retaliation. As such, the BOARD is liable for Southerland's actions due to its own negligence.

27. The above-described discriminatory and retaliatory conduct by Southerland was committed intentionally while Southerland was acting within the scope of his employment.

**COUNT I**
**GENDER DISCRIMINATION**
**TITLE VII OF THE *CIVIL RIGHTS ACT OF 1964*, 42 U.S.C. § 2000E**

28. The foregoing paragraphs are re-alleged and incorporated herein by reference.

29. The above conduct as alleged constitutes gender discrimination in violation of Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000E.

**COUNT II**
**GENDER DISCRIMINATION – HOSTILE WORK ENVIRONMENT**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E**

30. The foregoing paragraphs are re-alleged and incorporated herein by reference.

31. The above conduct as alleged constitutes gender discrimination – hostile work environment, in violation of Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000E.

**COUNT III**
**GENDER DISCRIMINATION - DISPARATE PAY**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E**

32. The foregoing paragraphs are re-alleged and incorporated herein by reference.

33. The above conduct as alleged constitutes gender discrimination-disparate pay, in violation of Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000E.

## COUNT IV
## RETALIATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E

34. The foregoing paragraphs are re-alleged and incorporated herein by reference.

35. The above conduct as alleged constitutes unlawful retaliation, in violation of Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000E.

## COUNT V
## GENDER DISCRIMINATION
### EQUAL PAY ACT OF 1963, 29 U.S.C. § 206, *et seq.*

36. The foregoing paragraphs are re-alleged and incorporated herein by reference.

37. The above conduct as alleged constitutes unlawful discrimination, in violation of *Equal Pay Act of 1963*, 29 U.S.C. § 206, *et seq.*

## COUNT VI
## RETALIATION
### EQUAL PAY ACT OF 1963, 29 U.S.C. § 206, *et seq.*

38. The foregoing paragraphs are re-alleged and incorporated herein by reference.

39. The above conduct as alleged constitutes unlawful retaliation, in violation of *Equal Pay Act of 1963*, 29 U.S.C. § 206, *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, SHERRIKA T. ELLISON, requests that Court award her the following relief:

(a) That the Defendant, BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, upon trial by jury, be adjudicated to have violated 42 U.S.C. § 2000E;

(b) That the Defendant, upon trial by jury, be adjudicated to have violated 29 U.S.C. § 206;

(c) That Plaintiff, SHERRIKA T. ELLISON, be awarded a retroactive promotion to the position of Director of the TRIO Upward Bound College Prep Academy of the Office of Minority Student Affairs, along with an award of all attendant back pay (estimated at $232,000.00) and benefits;

(d) That Plaintiff be awarded appropriate damages to compensate her for her economic damages, including but not limited to all back pay and all other benefits, and/or other appropriate relief to which she is entitled by virtue of Defendant's violations;

(e) That Plaintiff be awarded prejudgment interest on the above damages;

(f) That Plaintiff be awarded punitive damages in an appropriate amount and as allowed by law against the Defendant;

(g) That Plaintiff be awarded reasonable attorneys' fees, costs and litigation expenses incurred in this lawsuit, with interest thereon; and

(h) That Plaintiff be awarded any such other and further relief deemed just.

## JURY DEMAND

The Plaintiff requests a trial by jury.

[SIGNATURE PAGE TO FOLLOW]

Respectfully Submitted,

SHERRIKA T. ELLISON, Plaintiff,

By: /s/ Nina R. Gougis
Attorney for Plaintiff

Nina R. Gougis
ARDC#6299894
ANGELA EVANS LAW
110 SW Jefferson Ave, #510
Peoria, IL 61602
(309) 839-8340 – Office
(309) 419-4525 – Fax
Email: Nina@angelaevanslaw.com